FILED
2026 Sep-02 AM 11:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **FELICIA WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No.:** |
| | ) | |
| | ) | |
| **RIVER CITY CENTER HEALTHCARE,** | ) | |
| **SUNBRIDGE HEALTHCARE, LLC,** | ) | |
| **GENESIS HEALTHCARE, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

## I. INTRODUCTION

1. This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through 42 U.S.C, 2000e, et seq., commonly known as "Title Vii of the Civil Rights Act of 1964" ("Title VII"), as amended by the the "Civil Rights Act of 1991", which prohibit race discrimination and retaliation, the Americans With Disabilities Act, ("ADA") as amended by the "ADA Amendments Act of 2008" ("ADAAA"), which prohibit discrimination based upon disability and retaliation, and pursuant to 42 U.S.C. §1981, as last amended by the "Civil Rights Act of 1991" which prohibit race discrimination and retaliation.

2. Plaintiff seeks declaratory relief, and backpay, frontpay, compensatory damages, punitive damages, costs, attorney's fees and requests a jury trial.

## II. JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 2201; and 42 U.S.C. § 2000e-5(f)(3).

4. The unlawful employment practices alleged herein were committed by Defendants within Morgan County, the State of Alabama. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

5. Plaintiff requests a jury trial on all issues pursuant to 42 U.S.C. § 1981a and the Seventh Amendment of the Constitution of the United States.

## III. ADMINISTRATIVE EXHAUSTION

6. On or about December 3, 2024, Plaintiff filed a Charge of Discrimination with the EEOC, Charge No. 420-2025-00841, alleging retaliation. ("Exhibit A," attached).

7. On or about January 28, 2025, Plaintiff filed a Charge of Discrimination with the EEOC, amending Charge No. 420-2025-00841, alleging discrimination based on race and the Americans with Disabilities Act, and retaliation. ("Exhibit B," attached).

8. Plaintiff received a Notice of Right to Sue from the EEOC authorizing suit for Charge No. 420-2025-00841 on or about June 5, 2026. ("Exhibit C," attached).

9. Plaintiff has fulfilled all conditions precedent to the institution of this action.

10. This lawsuit was timely filed.

## IV. PARTIES

11. Plaintiff Felicia White is a black female citizen and a resident of Morgan County, Alabama. Plaintiff was employed by the Defendants in Decatur, Morgan County, Alabama, at all times relevant to this Complaint.

12. Defendant River City Center Healthcare is an entity that exists in its own name, or is the business name of another entity that is doing business as River City Center Healthcare, at all relevant times. This Defendant employed the Plaintiff jointly with other Defendant(s), and shared or co-determined essential terms and conditions of her employment with other Defendant(s). At the relevant times, it was doing business in the State of Alabama, but is not an entity qualified to do business in the State of Alabama.

13. Defendant SunBridge Healthcare, LLC is a New Mexico limited liability company qualified and doing business in the State of Alabama at all relevant times. This Defendant employed the Plaintiff jointly with, or doing business as River City Center Healthcare and/or jointly with other Defendant(s). It shared or co-determined essential terms and conditions of her employment with other Defendant(s).

14. Defendant Genesis Healthcare, Inc. is a Delaware corporation that has not qualified to do business in the State of Alabama, but was doing business in the State of Alabama, at all relevant times. This Defendant employed the Plaintiff jointly with, or doing business as River City Center Healthcare and/or jointly with other Defendant(s). It shared or co-determined essential terms and conditions of her employment with other Defendant(s).

15. The Defendants are employers in an industry affecting commerce and otherwise meet the definitional requirements of 42 U.S.C. § 2000e(a), (b), and 29 U.S.C. § 2611(4). The Defendants will be referred to collectively as "River City Healthcare." At all times relevant to this action, these Defendants employed the requisite number of employees and maintained operations in the Northern District of Alabama. The actions and

inactions of these Defendants and each of their agents, subsidiaries, servants, and employees, as set forth herein, are imputed to all of these Defendants jointly and severally. These Defendants operate together as a joint enterprise, and/or in an agency relationship with one another, and as a result, are all liable for the wrongful actions and inactions pled herein.

## V. BACKGROUND FACTS OCCURRING BEFORE APRIL 4, 2024

16. Plaintiff was rehired as a full-time Staffing Coordinator by River City Healthcare, on or about December 22, 2017.

17. On or about July 27, 2023, Plaintiff met with Joseph Dunavant, her immediate supervisor, a non-disabled white male, and complained to him that the Director of Nursing (DON) Susan Jones, a non-disabled white female, was racist, and was targeting black employees and talking to white employees negatively about black employees. Among her complaints, Plaintiff told Dunavant that Jones said that all of the "Lampkins" (a family name of a number of black employees, including the Plaintiff) cause trouble and should be fired. She also complained that Jones did not handle incidents with black employees according to policy, and in particular, about an incident involving the Plaintiff, in which she was mistreated by another black employee, but nothing was done in circumstances where a white employee would have been disciplined. Further, Plaintiff complained to Human Resources about these same matters.

18. On or about August 7, 2023, the Plaintiff complained to Human Resources and Dunavant, that when Jones was making hall changes, she commented that blacks would do better with a black nurse, and that another unit would take the manager more

seriously because she was white.

19. Sometime thereafter, April Swims, a nurse, complained to Jones about being moved, and Jones recounted to Swims a negative (and disputed) story about the Plaintiff. Jones told Swims, in substance, that she (Jones) was trying to get the Plaintiff fired, but that her hands were tied because the Plaintiff was playing “the race card”.

20. On multiple occasions afterward, continuing through October, 2024, Plaintiff complained to Human Resources, Dunavant and Amanda Smith, a corporate manager, that Jones continued to target black employees, speak about black employees in a derogatory manner, and handle incidents involving black employees differently than those involving white employees.

21. Plaintiff has multiple sclerosis (“MS”) which is exacerbated by stress. Her balance and mobility are impaired. She has exacerbations (flare-ups) from time to time. Her condition is permanent and progressive. She is restricted by her healthcare professionals to no more than 30 pounds lifting, limited stooping, bending, reaching, pushing/pulling, driving short distances and limited walking. She also has diagnoses of anxiety and major depressive disorder.

22. Plaintiff was able to, and did, perform the essential functions of her job as Staffing coordinator in a reasonably satisfactory manner and within her physical limitations, with or without reasonable accommodations.

23. When she was rehired, the Plaintiff informed River City Healthcare of her Plaintiff’s MS, and her physical limitations. Plaintiff explicitly told Dunavant and Jones that she could no longer do a CNA job due to her physical limitations.

24. On or about October 10, 2023, the Plaintiff was summoned to Dunavant's office, and told by Dunavant that Corporate had eliminated the Staffing coordinator positions in all Genesis facilities, effective October 20, 2023.

25. Dunavant told the Plaintiff that she had a choice of a 2 week severance payment or to go through CNA classes and work under the nursing budget. The Plaintiff reminded Dunavant that she was not able to work as a CNA due to her physical limitations.

26. The Plaintiff's MS flared up immediately upon being told that she was losing her job. Her mental health also declined. The Plaintiff took leave under the Family Medical Leave Act (FMLA) on or about October 26, 2023, to address her MS symptoms and her mental health.

27. The Plaintiff returned to work on or about January 9, 2024.

28. Upon her return, the Plaintiff was not fired. Instead, Dunavant offered the Plaintiff a full-time job as a ward clerk, doing rounds and other paperwork, which was a job that she could perform in a reasonably satisfactory manner, with or without reasonable accommodations.

29. After clarifying her duties (the essential functions of the job) with Dunavant, to make sure that she could perform them with or without reasonable accommodation for her disability, the Plaintiff accepted the job. Jones became her immediate supervisor.

30. On or about March 21, 2024, the Plaintiff learned that the Staffing position had not been eliminated, but rather, the Human Resources position had been eliminated, the Human Resources function had been assumed by Corporate Human Resources, and Diana Smith, the former Human Resources coordinator, a white, non-disabled female, had

been given the Plaintiff's Staffing coordinator job.

31. In all other Genesis facilities, the Staffing coordinator was retained in the Staffing coordinator job. In all other Genesis facilities, the Human Resource coordinator was terminated.

32. Jones and Dunavant, were final decision-makers in the decision to terminate the Plaintiff from the Staffing coordinator position, or else their recommendation regarding Plaintiff's continued employment was accepted by the final decision-maker without independent investigation into Plaintiff's job performance and qualifications.

33. On or about April 4, 2024, the Plaintiff filed her first EEOC charge.

## VI. <u>FACTS OCCURRING AFTER APRIL 4, 2024</u>

34. The Plaintiff received a Notice of Right to Sue for her first EEOC charge on or about April 10, 2024, which is the subject of a separate lawsuit, *White v. River City Healthcare*, filed on June 3, 2024, in the United States District Court for Northern Alabama, Northeastern Division, Case No.: 5:24-cv-0712 LCB. The Complaint was served on or about July 1, 2024.

35. On information and belief, after the Plaintiff served her Complaint, River City Healthcare began investigating her because she filed a lawsuit corresponding to her EEOC charge, and because she complained in that lawsuit of Title VII, 42 U.S.C. §1981 and/or ADA/ADAAA violations, based on race and disability.

36. On or about August 16, 2024, Becky Stinnett, corporate Human Resources Director, a white, non-disabled female, initiated a first contact with the Plaintiff, ostensibly to discuss accommodations under the ADA.

37. At that time, the Plaintiff was satisfied with the accommodations she was receiving and was able to, and did, perform her job duties as assigned, in a reasonably satisfactory manner and within her physical limitations.

38. As a part of the investigation of the Plaintiff, Riverside Healthcare deemed the Plaintiff's job as an ADA accommodated ward clerk, which she had been doing since January, 2024, and which had been expressly assigned to her by Dunavant after an interactive process to determine reasonable accommodations, not a 'real' position in the workplace.

39. Although Plaintiff explained her restrictions and the process by which her job duties as ward clerk had been assigned, Stinnett told the Plaintiff that the only 'real' positions available to her were part-time receptionist and part-time driver, for a total of only 32 hours per week, and that if she did not accept one or both of those positions, she would be terminated.

40. The two part-time jobs proffered by River City Healthcare were not comparable to the Plaintiff's job as a ward clerk, and were not jobs that she could physically perform on a regular basis.

41. The Plaintiff told Stinnett that she could not do these jobs, but Stinnett insisted that she could.

42. In a follow-up meeting on or about September 20, 2024, Plaintiff explained to Stinnett why she is unable to do those jobs within her physical restrictions, as the duties of those jobs are actually performed in the workplace. Stinnett reiterated to Plaintiff that her choice was to take one or the other of those jobs, or be terminated. No discussion of possible accommodations was allowed, instead, Stinnett continued to insist that the Plaintiff

could physically do those jobs.

43. Plaintiff's MS flared up again after learning that going forward she was going to be expected to do jobs that she could not physically perform, and she was placed on FMLA leave again on or about September 27, 2025.

44. After inquiries, on or about January 27, 2025, Plaintiff advised Stinnett once again that she was unable to do either of the jobs offered due to her health and physical restrictions.

45. On or about January 27, 2025, the Plaintiff was formally, or constructively discharged.

## VII. <u>CLAIMS DEPENDENT ON NOTICE OF RIGHT TO SUE ISSUED JUNE 5, 2026</u>

### <u>COUNT I - ADA DISCRIMINATION/FAILURE TO ACCOMMODATE</u>

46. The Plaintiff incorporates by reference the allegations in Paragraphs 1 - 45 as if fully set forth herein.

47. After April 4, 2024, the Plaintiff was a member of a protected class as a qualified employee with a disability, and/or a record of disability, and/or she was regarded as disabled.

48. River City Healthcare was on notice that the Plaintiff suffered from a disability.

49. The Plaintiff was performing the essential functions of her job as a ward clerk within reasonable expectations.

50. The ward clerk job duties were determined after an informal interactive process between Dunavant and the Plaintiff for the purpose of accommodating the Plaintiff's physical impairment and assigning the essential duties of the job.

51. The Plaintiff was discharged without cause from her job as an accommodated

ward clerk, when she was told that her job was "not a real job" and offered two part-time jobs with fewer hours, that she physically could not perform on a regular basis. River City Heathcare's explanation for her discharge was a pretext for illegal discrimination and failure to accommodate.

52. River City Healthcare refused to allow accommodations for the part-time positions.

53. River City Healthcare violated the ADA, as amended, when it discharged the Plaintiff.

54. River City Healthcare knew or should have known that discharging the Plaintiff violated the ADA, as amended.

55. River City Healthcare violated the ADA, as amended, when it denied reasonable accommodation to the Plaintiff.

56. River City Healthcare knew or should have known that denying reasonable accommodation to the Plaintiff violated the ADA, as amended.

57. The Plaintiff has suffered loss of income and benefits, healthcare expenses, mental anguish, emotional distress, inconvenience, and loss of enjoyment of life as a proximate result of River City Healthcare's wrongful actions, and will continue to suffer these losses in the future.

**COUNT II- RETALIATION UNDER THE ADA**

58. The Plaintiff incorporates by reference the allegations in Paragraphs 1 - 45 as if fully set forth herein.

59. River City Healthcare discharged the Plaintiff for opposing disability

discrimination, and/or for participation in an investigation, proceeding, or hearing related to disability discrimination or harassment.

60. The alleged conduct constituted unlawful retaliation and violates the Americans With Disabilities Act, ("ADA") , as amended.

61. The River City Healthcare willfully and maliciously retaliated against Plaintiff, with reckless disregard for her rights.

62. As a proximate result of the River City Healthcare's wrongful conduct, Plaintiff has been injured and damaged as follows: she has suffered mental and emotional distress, pain and suffering, loss of enjoyment of life, and lost wages and benefits, and those injuries and damages are ongoing.

**COUNT III - RETALIATION - TITLE VII**

63. The Plaintiff incorporates by reference the allegations in Paragraphs 1 - 45 as if fully set forth herein.

64. River City Healthcare discharged the Plaintiff for opposing race discrimination, and/or for participation in an investigation, proceeding, or hearing related to race discrimination or harassment.

65. The alleged conduct constituted unlawful retaliation and violates Title VII of the Civil Rights Act of 1964, as amended.

66. The River City Healthcare willfully and maliciously retaliated against Plaintiff, with reckless disregard for her rights.

67. As a proximate result of the River City Healthcare's wrongful conduct, Plaintiff has been injured and damaged as follows: she has suffered mental and emotional distress,

pain and suffering, loss of enjoyment of life, and lost wages and benefits, and those injuries and damages are ongoing.

**COUNT IV - RETALIATION - 42 U.S.C. §1981**

68. The Plaintiff incorporates by reference the allegations in Paragraphs 1 - 45 as if fully set forth herein.

69. River City Healthcare discharged the Plaintiff for opposing race discrimination, and/or for participation in an investigation, proceeding, or hearing related to race discrimination or harassment.

70. The alleged conduct constituted unlawful retaliation and violates 42 U.S.C. §1981, as amended.

71. The Defendants, individually and collectively, willfully and maliciously retaliated against Plaintiff, with reckless disregard for her rights.

72. As a proximate result of the Defendants' wrongful conduct, Plaintiff has been injured and damaged as follows: she has suffered mental and emotional distress, pain and suffering, loss of enjoyment of life, and lost wages and benefits, and those injuries and damages are ongoing.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court assumes jurisdiction of this action and after trial:

73. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendants are violative of the rights of Plaintiff, as secured by Title VII and 42 U.S.C. §1981, and the ADA/ADAAA .

74. Grant Plaintiff a permanent injunction enjoining the Defendants, their agents, successors, employees, attorneys and those acting in concert with and at the request of Defendants from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. § 2000e et seq. and the Civil Rights Act of 1991 and 42 U.S.C. §1981, and the Americans With Disabilities Act, ("ADA") as amended by the "ADA Amendments Act of 2008" ("ADAAA").

75. Award Plaintiff backpay, frontpay and lost benefits.

76. Award Plaintiff compensatory and/or nominal damages, and/or punitive damages.

77. Award Plaintiff pre-judgment and post-judgment interest.

78. Award Plaintiff attorneys' fees and costs.

79. Grant such other and further relief as the cause of justice requires.

/s/ Kerri Johnson Riley
Kerri Johnson Riley (asb-9641-e67k)
*Attorney for Plaintiff*
120 Holmes Avenue, Suite 403
Huntsville, Alabama 35801
(256) 535-0800
E-mail: kjr@kerrijohnsonriley.net

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY AS TO ALL CLAIMS TRIABLE BY A JURY.**

/s/ Kerri Johnson Riley
Kerri Johnson Riley